FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2017 JUL 31 PM 1: 19

## IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | |
| Respondent, | No. 76741-1-I |
| v. | DIVISION ONE |
| JOSHUA DAVID CHARLES RHOADES, | UNPUBLISHED OPINION |
| Appellant. | FILED: July 31, 2017 |

LEACH, J. — Joshua Rhoades appeals the trial court's denial of his motion to vacate his legal financial obligations (LFOs). Because the trial court adequately considered Rhoades's ability to pay, it did not abuse its discretion when it denied Rhoades's motion. We affirm.

### Background

In 1999, Rhoades was convicted of assault in the second degree. The judgment and sentence imposed these LFOs: a $1,000 Lewis County Jail fee, $380 in court-appointed attorney fees, a $110 filing fee, a $500 victim assessment, and $4,054 in restitution. The court later ordered him to pay an additional $3,656 in restitution.

In 2000, Rhoades was convicted of four counts of vehicle prowling in the second degree, theft in the second degree, and theft in the third degree. The judgment and sentence imposed these LFOs: a $1,000 Lewis County Jail fee,

$380 in court-appointed attorney fees, a $110 filing fee, a $500 victim assessment, and $545 in restitution.

In 2007, Rhoades was convicted of harassment and unlawful display of a weapon. The judgment and sentence imposed these LFOs: a $200 filing fee, a $500 victim assessment, $800 in court-appointed attorney fees, a $210 subpoena service fee, a $1,000 Lewis County Jail fee, and $565 for investigative services.

In April 2016, Rhoades filed a CrR 7.8 motion to modify or terminate his unpaid LFOs owed on these judgments.

At the motion hearing on the matter, Rhoades emphasized that he had four children to support. His counsel also told the court that Rhoades had completed a specialty pastry and baking college program, which qualified him to apply for baking jobs when released. In addition, he was enrolled in a number of other programs, including a math program and legal writing and paralegal courses. He had plans to take additional courses such as carpentry and business management. The court noted that Rhoades had been able to pay $1,450 to take classes in prison.

Rhoades acknowledged that he had no physical, mental, or emotional reason why he could not hold a job, if offered one. When the court asked Rhoades if there was anything else it should know about his CrR 7.8 motion, Rhoades responded, "No."

Based on this information, the trial court found Rhoades had the future ability to pay and denied his motion. It offered, however, to waive the interest on

his LFOs once he had paid off the principal amount as long as he continuously made minimal payments and the debts were not sent to a collection agency.

To permit Rhoades to appeal at public expense, the superior court later entered an order of indigency.

Analysis

Rhoades challenges the trial court's denial of his motion to vacate his LFOs.

CrR 7.8(b) permits a court to amend a judgment to correct an erroneous sentence where justice requires. We review a decision on a CrR 7.8 motion for abuse of discretion.[1] We also review a decision imposing LFOs for abuse of discretion.[2] A trial court abuses its discretion when it exercises discretion in a manifestly unreasonable manner or bases its decision on untenable grounds or reasons.[3]

Rhoades contends that the trial court did not adequately consider his ability to pay his LFOs. "The court shall not order a defendant to pay costs unless the defendant is or will be able to pay them."[4] As our Supreme Court explained in State v. Blazina,[5] a trial court must conduct "an individualized inquiry into the defendant's current and future ability to pay" before it may impose discretionary LFOs. It must consider factors like incarceration and the defendant's other debts.[6]

---

[1] State v. Hardesty, 129 Wn.2d 303, 317, 915 P.2d 1080 (1996).
[2] State v. Clark, 191 Wn. App. 369, 372, 362 P.3d 309 (2015).
[3] State v. Neal, 144 Wn.2d 600, 609, 30 P.3d 1255 (2001).
[4] RCW 10.01.160(3).
[5] 182 Wn.2d 827, 838, 344 P.3d 680 (2015).
[6] Blazina, 182 Wn.2d at 838.

First, Rhoades does not distinguish between his mandatory and discretionary LFOs. A trial court cannot consider ability to pay before it imposes mandatory LFOs like the criminal filing and DNA (deoxyribonucleic acid) testing fees.[7] Restitution is also a mandatory obligation for which a sentencing court may not consider ability to pay.[8] Thus, a trial court's duty to consider ability to pay applies only to discretionary LFOs like jail fees and attorney fees.

For the discretionary LFOs, the court adequately considered Rhoades's ability to pay. First, it considered the job training that Rhoades received while incarcerated. It also considered whether any disability impeded his ability to work or hold a job. The court gave Rhoades the opportunity to identify any other debts. And, notably, the court considered the burden that the LFOs imposed, particularly in light of the steep 12 percent interest rate that LFOs accumulate.[9] The court told Rhoades that if he continued to make regular, minimal payments, the court would later waive any remaining interest. The trial court adequately considered Rhoades's ability to work and the burden that LFOs would impose before it denied his motion.

---

[7] State v. Lundy, 176 Wn. App. 96, 102, 308 P.3d 755 (2013).

[8] Lundy, 176 Wn. App. at 102. "Restitution shall be ordered whenever the offender is convicted of an offense which results in injury to any person or damage to or loss of property . . . unless extraordinary circumstances exist which make restitution inappropriate . . . ." RCW 9.94A.753(5). "The court may not reduce the total amount of restitution ordered because the offender may lack the ability to pay the total amount." RCW 9.94A.753(4).

[9] Blazina noted that "on average, a person who pays $25 per month toward their LFOs will owe the State more 10 years after conviction than they did when the LFOs were initially assessed." Blazina, 182 Wn.2d at 836.

Rhoades also contends that the court abused its discretion by finding that he had the future ability to pay. But given that Rhoades had completed a number of training courses and had no physical, mental, or emotional reason he could not work, the record adequately supports the court's conclusion that Rhoades would have the future ability to pay his LFOs, particularly in light of the court's offer to forgive the interest on his LFOs.

We next address Rhoades's pro se arguments.

First, he asserts that the trial court's inquiry into his ability to pay LFOs when considering his motion to vacate cannot cure the original sentencing court's failure to consider his ability to pay each time it first imposed LFOs. His argument ignores the appropriate relief for this error. When a trial court fails to consider ability to pay, the appropriate remedy is to remand for resentencing, not to vacate the LFOs the court imposed.[10] CrR 7.8 does not provide a procedural loophole for Rhoades to obtain this inappropriate remedy unavailable on direct review. And because the trial court engaged in the analysis required by Blazina, he cannot show that the original court's error harmed him.

Next, citing Blazina and RCW 10.01.160(3), Rhoades asserts that the trial court had to vacate his LFOs because Lewis County courts have found him indigent. But the only orders of indigency in the record were entered after the court's decision on the CrR 7.8 motion. In addition, while Blazina advises courts

---

[10] State v. Duncan, 185 Wn.2d 430, 437, 374 P.3d 83 (2016).

to look to GR 34 for guidance in deciding whether to impose LFOs,[11] "Blazina's reference to GR 34 does not change the law; it simply gives courts guidance when determining the individual's ability to pay LFOs."[12] As we have discussed, the trial court adequately considered Rhoades's ability to pay.

Finally, Rhoades asserts that the trial court should have applied the "manifest hardship" standard of RCW 10.01.160(4).

RCW 10.01.160(4) provides,

A defendant who has been ordered to pay costs and who is not in contumacious default in the payment thereof may at any time petition the sentencing court for remission of the payment of costs or of any unpaid portion thereof. If it appears to the satisfaction of the court that payment of the amount due will impose manifest hardship on the defendant or the defendant's immediate family, the court may remit all or part of the amount due in costs, or modify the method of payment under RCW 10.01.170.

This statute applies to a motion for remission. Rhoades did not move for remission. Thus, the statute's standard did not apply to his motion.

## Conclusion

We affirm the trial court's denial of Rhoades's CrR 7.8 motion.

_Leach, J._

WE CONCUR:

_Cox, J._

---

[11] Blazina, 182 Wn.2d at 838-39.

[12] In re Pers. Restraint of Flippo, 191 Wn. App. 405, 411, 362 P.3d 1011 (2015), aff'd, 187 Wn.2d 106, 385 P.3d 128 (2016).